WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Metropolitan Life Insurance Company, a New York corporation, | No. CV-12-372-PHX-GMS |
| Plaintiff/Counter-Defendant, | **ORDER** |
| v. | |
| Inna Ogandzhanova, M.D., | |
| Defendant/Counter-Claimant. | |

Pending before the Court are Plaintiff's Motion for Summary Judgment (Doc. 280) and Defendant's Motion for Summary Judgment (Doc. 282). For the following reasons, Plaintiff's Motion is granted in part and denied in part and Defendant's Motion is denied.

**BACKGROUND**

This case arises from two disability insurance policies (collectively, the "Policies"). Defendant Dr. Inna Ogandzhanova practiced as a radiation oncologist. (Doc. 283 ("DSOF") ¶ 12.) On March 10, 1999, Dr. Ogandzhanova purchased an individual disability insurance policy (the "1999 Policy") from Plaintiff Metropolitan Life Insurance Company ("MetLife"). (Doc. 1 ¶ 7.) The 1999 Policy provides for the payment of a monthly benefit of $9,500, plus any applicable cost-of-living adjustments, to Dr. Ogandzhanova if and while she is "totally disabled" under the terms of the policy. (*Id.* ¶ 8.) The 1999 Policy defines "total disability" as when, "because of injury or sickness, you

are not able to perform the material and substantial duties of your regular occupation (your regular occupation is your usual work when total disability starts), even if you are gainfully employed in another occupation." (*Id.*)  The 1999 Policy also states that "[y]ou will not be considered to be totally disabled for any time you are not receiving care by a physician which is appropriate for the condition causing the disability." (Doc. 281-2 at 81.)

Dr. Ogandzhanova moved to Arizona around the year 2000 and established Desert Rose Oncology. (DSOF ¶ 13.) In November 2001, her son was diagnosed with leukemia and began lengthy cancer treatment in Phoenix and Tucson. (DSOF ¶ 19–51.) Dr. Ogandzhanova continued to practice medicine during the course of this treatment. (DSOF ¶ 34.) On March 15, 2006, Dr. Ogandzhanova's son died at age seven from complications caused by his cancer. (DSOF ¶ 52.)

On July 28, 2006, Dr. Ogandzhanova purchased a second individual disability insurance policy from MetLife (the "2006 Policy"). (Doc. 1 ¶ 11.) The 2006 Policy provides for the payment of a monthly benefit of $5,500, plus any applicable cost-of-living adjustments, to Dr. Ogandzhanova if and while she is "totally disabled" under the terms of the policy. (*Id.* ¶ 12.) The 2006 Policy defines "totally disabled" or "total disability" as "that due solely to Impairment caused by Injury or Sickness, you are: a. Prevented from performing the material and substantial duties of Your Regular Occupation; and b. Receiving appropriate care from a Physician who is appropriate to treat the condition causing the Impairment." (Doc. 281-2 at 132.)

Dr. Ogandzhanova continued to practice as a radiation oncologist following her son's death. (Doc. 315 ("PCSOF") ¶ 69.) In the fall of 2006, she claims she began to experience symptoms of depression and panic attacks, but continued to practice full-time. (DSOF ¶ 97.) In January 2007, she began to see Dr. Rozansky, a psychiatrist in Los Angeles. (DSOF ¶ 103.) Dr. Ogandzhanova claims that Dr. Rozansky diagnosed her with Post-Traumatic Stress Disorder ("PTSD"), depression, and complicated grief. (DSOF ¶ 116.) Dr. Ogandzhanova continued to work at Desert Rose Oncology until she sold the

practice on March 12, 2007. (Doc 281-1 at 173.) Dr. Ogandzhanova asserts that in June 2007, Dr. Rozansky suggested it might better for her mental health if she did not continue practicing radiation oncology (DSOF ¶ 125), but MetLife disputes this claim as unsupported by Dr. Rozansky's treatment records (PCSOF ¶ 125).

In early June 2007, Dr. Ogandzhanova gave notice to MetLife of her intention to file a disability claim. (DSOF ¶ 130.) On or around September 14, 2007, Dr. Ogandzhanova's counsel submitted a formal claim package to MetLife. (DSOF ¶ 150.) In her application, Dr. Ogandzhanova claimed she was disabled from her occupation of radiation oncologist as of March 13, 2007 due to depression, anxiety, and panic attacks. (Doc. 1 ¶ 23.) MetLife requested Dr. Ogandzhanova's medical records and began to evaluate her claim. (*Id* ¶ 25.) This investigation included a review of the treatment notes of Dr. Ogandzhanova's medical providers and an independent medical examination ("IME") by neuropsychologist Dr. David Lamb.

In a letter dated April 22, 2008, MetLife accepted Dr. Ogandzhanova's claim without reservation. (Doc. 1 ¶ 29.) Pursuant to the Policies, MetLife continued to evaluate Dr. Ogandhzanova's condition to verify her continuing eligibility for benefits. This included a psychiatric IME by psychiatrist Dr. Joel Parker on September 21, 2010 and a second neuropsychological evaluation by Dr. Lamb, conducted on March 2 and 8, 2011. (Doc. 1. ¶ 35.) On June 2, 2011, Dr. Parker supplemented his earlier report after reviewing additional data, including Dr. Lamb's second IME report and a November 2011 letter from Dr. Rozansky. (Doc. 1 ¶ 37.) On June 8, 2011, Dr. Kaplan reviewed the file and determined that the documentation did not support that Dr. Ogandzhanova was unable to work as a radiation oncologist. (Doc. 1 ¶ 38.) Based on the totality of information, MetLife determined that Dr. Ogandzhanova was no longer disabled under the Policies. (Doc. 281 ("PSOF") ¶ 1.) On June 27, 2011, MetLife advised Dr. Ogandzhanova's counsel by telephone that MetLife had completed its review and found that she had no restrictions or limitations that would prevent her return to practice as a radiation oncologist. (Doc. 1 ¶ 39.) On July 1, 2011, MetLife sent a letter to Dr.

Ogandzhanova's counsel, stating that "[r]egarding the current status of the claim, based upon the totality of information reviewed, we do not find that Dr. Ogandzhanova is experiencing any restrictions and limitations as a result of her claimed psychiatric condition, and we firmly believe this finding is supported by the independent and objective testing carried out by Drs. Parker and Lamb, as well as in the opinions offered by our consulting psychiatrist and neuropsychologist." (Doc. 281-2 at 74.) The letter went on to state that MetLife had provided copies of Dr. Parker's and Dr. Lamb's reports to Dr. Rozansky and invited feedback on those reports. (*Id.*) MetLife explained that while it found that Dr. Ogandzhanova had no current restrictions "we want to afford Dr. Ogandzhanova the opportunity to provide us with any additional information to consider in our review" including "details of any other treatment she is receiving or doctor that she is seeing." (*Id.*)

On February 22, 2012, MetLife filed the present action seeking a declaratory judgment that, as of July 1, 2011, Dr. Ogandzhanova was not disabled as defined by the Policies and thus that MetLife is entitled to recover all benefits paid since that date. (Doc. 1.) MetLife has continued to pay Dr. Ogandzhanova the full amount of benefits owed under the Policies during the course of this action. (PSOF ¶ 3; Doc. 313 ("DCSOF") ¶¶ 2, 3.) In her Answer to the Complaint, Dr. Ogandzhanova asserted a counterclaim alleging that MetLife has breached the implied duty of good faith and fair dealing by deciding that she is no longer entitled to benefits, by filing the instant declaratory judgment action, and by seeking repayment of benefits since July 2011. (Doc. 8.) MetLife now moves for summary judgment both on its declaratory judgment claim and on Dr. Ogandzhanova's counterclaim. (Doc. 280.) Dr. Ogandzhanova now moves for summary judgment on MetLife's declaratory judgment claim. (Doc. 282.)

**DISCUSSION**

**I.   Legal Standard**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to

- 4 -

any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Substantive law determines which facts are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson*, 477 U.S. at 248). Thus, the nonmoving party must show that the genuine factual issues "'can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (quoting *Anderson*, 477 U.S. at 250). Because "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, . . . [t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor" at the summary judgment stage. *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). Furthermore, the party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995).

## II. Declaratory Judgment Claim

### A. Coverage under the Policies

MetLife and Dr. Ogandzhanova both move for summary judgment on MetLife's declaratory judgment claim. MetLife asserts that summary judgment is proper as Dr.

- 5 -

Ogandzhanova has failed to obtain appropriate care as required by the Policies. Dr. Ogandzhanova alleges that MetLife has failed to meet its burden to provide a basis for the termination of her claim because they cannot dispute that she has PTSD and thus cannot practice radiation oncology.

Neither party disputes that the Policies require Dr. Ogandzhanova to be totally disabled from practicing radiation oncology to receive benefits and that total disability includes receiving appropriate treatment for the condition causing her disability. MetLife claims that Dr. Ogandzhanova has not done so because she has failed to obtain care for complicated grief and because she has not received more frequent or different treatment outside her appointments with Dr. Rozansky. (PSOF ¶¶ 4, 8–10.) Dr. Ogandzhanova claims that her appointments with Dr. Rozansky constitute appropriate treatment and that it is inconsequential that she has not received particular treatment for complicated grief as it is her PTSD that prevents her from practicing. (DCSOF ¶¶ 4, 8.)

The Policies do not define the scope of this "appropriate care" requirement, nor does either party provide authority that persuades this Court that "appropriate care" has been construed as a matter of law in the facts of any given case. Neither party appears to assert that to obtain appropriate care requires that an insured obtain all possible medical treatment. Instead, the parties dispute whether Dr. Ogandzhanova's current treatment with Dr. Rozansky, without the addition of treatment such as more frequent appointments with Dr. Rozansky or grief counseling, is sufficient to constitute appropriate care.

In her Motion, Dr. Ogandzhanova claims that she has PTSD and that this diagnosis necessarily precludes her return to radiation oncology. Thus she asserts that MetLife has failed to provide a basis for terminating her claim. In response, MetLife points to the opinions of four, board-certified medical professionals who suggest that Dr. Ogandzhanova could return to practice and that the record contains insufficient evidence to support her self-reported inability to practice. For example, on October 2, 2010, Dr. Parker explained that "Dr. Ogandzhanova MAY have difficulties returning to work as a radiation oncologist, due to her subjective report that she cannot be near cancer patients. I

have no objective data to support this contention, and again, note potential issues with her credibility as a historian." (Doc. 281-1 at 29–30.) On October 30, 2011, Dr. Kaplan described that "based on all the available evidence, the documentation does not support that Dr. Inna Ogandzhanova is impaired from working as a radiation oncologist secondary to Major Depressive Disorder, PTSD or any other psychiatric disorder." (Doc. 281-2 at 51.) On March 14, 2011, Dr. Lamb noted that "the primary finding of the current evaluation is the evidence from multiple sources that Dr. Ogandzhanova is exaggerating the severity of the cognitive and emotional symptoms she claims to be experiencing, as well as the extent to which they adversely impact her ability to function." (Doc. 281- 1 at 43.)  On June 2, 2011, Dr. Parker again opined that "[t]he available evidence indicates that Dr. Ogandzhanova has an aversion to dealing with oncology patients but has no other psychiatric impediment to her working as a radiation oncologist." (Doc. 281-2 at 66.)

In sum, both the issues of whether Dr. Ogandzhanova has received appropriate medical care and whether MetLife has provided a sufficient basis for terminating her claim involve various disputed issues of material fact. Thus, neither party is entitled to summary judgment on MetLife's declaratory judgment claim.

### B.     Cost of Living Increases after Age 65

MetLife also moves for summary judgment on the particular sub-issue of Dr. Ogandzhanova's claim for cost-of-living adjustments past age 65. The Policies state that "no cost-of-living adjustments will be made after . . . [t]he first Premium Due Date on or after Your 65th birthday." (PSOF ¶ 12.) Dr. Ogandzhanova evidently represented to MetLife that she would withdraw this claim to avoid having to re-open her deposition on this subject, but has apparently refused to agree to a stipulation formally dismissing this claim. (Doc. 280 at 21.) Dr. Ogandzhanova states in her Response to MetLife's Motion that she will not pursue this claim further. (Doc. 312 at 24.) As the claim is precluded by the plain language of the Policies and is not disputed by Dr. Ogandzhanova, MetLife is entitled to summary judgment on any claim that might have been asserted by Dr. Ogandzhanova regarding cost-of-living increases after age 65.

### III. Bad Faith Counterclaim

In her counterclaim, Dr. Ogandzhanova alleges that MetLife has breached the implied duty of good faith and fair dealing in deciding that she is no longer entitled to benefits, by filing the instant declaratory judgment action, and by seeking repayment for benefits paid since July 2011 "without any reasonable basis for doing so." (Doc. 8 ¶ 46.) An insurer "may commit bad faith not only by intentionally and unreasonably denying a claim, but also by intentionally processing, evaluating, or paying a claim in an unreasonable manner." *James River Ins. Co. v. Herbert Schenk, P.C.*, 523 F.3d 915, 923 (9th Cir. 2008) (citing *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 196 Ariz. 234, 237, 995 P.2d 276, 279 (2000)); *see also Trus Joist Corp. v. Safeco Ins. Co. of Am.*, 153 Ariz. 95, 103, 735 P.2d 125, 133 (App. 1986). To establish a material dispute as to bad faith for purposes of avoiding summary judgment, Dr. Ogandzhanova must set forth relevant facts from which a jury could conclude both that the insurer (1) "acted unreasonably toward its insured" and (2) "acted knowing that it was acting unreasonably or acted with such reckless disregard that such knowledge may be imputed to it." *Trus Joist*, 153 Ariz. at 104, 735 P.2d at 134.

MetLife contends that its actions were objectively reasonable because they relied on the medical opinions of two board-certified psychiatrists and two board-certified neuropsychologists. (PSOF ¶ 1.) In sum, MetLife asserts that because the claim was fairly debatable, it cannot be liable for bad faith by thoroughly investigating the claim. (*Id.* (citing *Knoell v. Metro. Life Ins. Co.,* 163 F. Supp. 2d 1072, 1075 (D. Ariz. 2001) ("[W]hen there is a question of fact as to liability on the underlying policy, then as a matter of law, the insurance company is not liable for bad faith."))).

#### A. Fair Debatability of the Claim

The Arizona Supreme Court has made clear that fair debatability is a "necessary condition to avoid a claim of bad faith," but "it is not always a sufficient condition." *Zilisch*, 196 Ariz. at 238, 995 P.2d at 280. "While an insurer may challenge claims which are fairly debatable, its belief in fair debatability 'is a question of fact to be determined by

the jury.'" *Id.* at 237, 995 P.2d at 279 (internal citation omitted) (quoting *Sparks v. Republic Nat'l Life Ins. Co.*, 132 Ariz. 529, 539, 647 P.2d 1127, 1137 (1982)). However, "[i]f the [party asserting coverage] offers no significantly probative evidence that calls into question the [party questioning coverage's] belief in fair debatability . . . the court may rule on the issue as a matter of law." *Young v. Allstate Ins. Co.*, 296 F. Supp. 2d 1111, 1116 (D. Ariz. 2003); *see also Lopez v. Allstate Ins. Co.*, 282 F. Supp. 2d 1095, 1100 (D. Ariz. 2003).

Defendant seems to argue that it cannot be debatable that she is disabled because she suffers from PTSD and PTSD symptoms include avoiding stimuli associated with the underlying trauma. (Doc. 282 at 16.) Here, that underlying trauma was the loss of her son from cancer. Thus, Dr. Ogandzhanova asserts that she cannot continue to work as an oncologist. (*Id.*) However, Defendant cannot dispute that board-certified psychiatrist Dr. Parker found that there was "no psychiatric reason that Dr. Ogandzhanova would be unable to return to work as a radiation oncologist," despite knowing about her alleged PTSD diagnosis. (PCSOF ¶ 349.) Further, Plaintiff offers evidence that MetLife had reason to believe that Dr. Ogandzhanova might have been exaggerating her symptoms. (*Id.* ¶¶ 356–61.) While disputing the evidence, Dr. Ogandzhanova does not dispute that MetLife has evidence that so suggests, nor does she dispute that MetLife continues to pay policy benefits to the her, albeit under a reservation of rights, while bringing a declaratory judgment action in which this Court will determine her eligibility. She has not offered any evidence that raises a genuine issue as to Plaintiff's belief in the fair debatability of her claim. For example, she has set forth no facts upon which a reasonable jury could conclude that MetLife had reason to know that the four doctors would not give a good faith assessment of Dr. Ogandzhanova's various capacities. *See Young*, 296 F. Supp. 2d at 1116 (citing *Knoell*, 163 F. Supp. 2d at 1077 ("[B]ecause there are no questions of fact to present to a jury about whether the insurance company really believed it should investigate the claim verses [sic] just using the investigation as a pretext to avoid payment, this Court concludes that the Defendant did not act in bad faith by investigating

the claim.")).

Because the validity of Defendant's claim was fairly debatable, Plaintiff cannot be liable for bad faith for investigating the claim or filing the declaratory judgment action. *See Knoell*, 163 F. Supp. 2d at 1075; *see also Sciranko v. Fid. & Guar. Life Ins. Co.*, 503 F. Supp. 2d 1293, 1321 (D. Ariz. 2007) ("Liability will not attach if the insured's claim is 'fairly debatable' from an objective standpoint and is subjectively perceived as such by the insurer."); *Desert Mountain Props. Ltd. P'ship v. Liberty Mut. Fire Ins. Co.*, 225 Ariz. 194, 215, 236 P.3d 421, 442 (App. 2010) ("An insurer's failure to pay a claim is not unreasonable when the claim's validity is 'fairly debatable.'" (citing *Rawlings v. Apodaca*, 151 Ariz. 149, 156, 726 P.2d 565, 572 (1986))).

### B. Insurer Knowledge of Unreasonable Conduct

In addition to failing under this first prong of the test, Defendant also fails to raise an issue of fact as to whether the Plaintiff "acted knowing that it was acting unreasonably or acted with such reckless disregard that such knowledge may be imputed to it." *Trus Joist*, 153 Ariz. at 104, 735 P.2d 125, 134. This second prong of the test for bad faith liability is "a subjective look at whether the insurer knew or was conscious of its unreasonable conduct." *Leavey v. UNUM/Provident Corp.*, CV-02-2281-PHX-SMM, 2006 WL 1515999 (D. Ariz. May 26, 2006) *aff'd sub nom. Leavey v. Unum Provident Corp.*, 295 F. App'x 255 (9th Cir. 2008). Here, MetLife chose to accept Defendant's claim under a reservation of rights, continue to pay that claim in full, and file the present action. Defendant provides no evidence to suggest that MetLife continued to investigate her claim as part of a scheme to terminate claims or for any other reason than genuine doubt as to the validity of her claim. *Leavey*, 2006 WL 1515999 at *4–5 (concluding the jury's finding of bad faith was proper due to evidence that included insurer's set goals for terminating claims, how the witness "described various methods used by [insurer] to meet those goals," and insurer's "targeting of psychiatric claims because of the 'gray area' and subjectivity involved in assessing those claims").

/ / /

1  Defendant states that "a [j]ury will see the filing of this [action] as one of strategy
2 with no regard to the effect it would have on [her] mental health and peace of mind."
3 (Doc. 312.) However, Defendant fails to provide evidence to suggest the existence of
4 such a strategy. She argues that "[a] jury could find that MetLife conducted a biased
5 investigation designed to lead to termination, given how obvious and predictable these
6 mental health problems were." (Doc. 312 at 10.) She suggests that Dr. Parker's reports
7 "were biased and filled with dishonest accusations" (*Id.* at 14) and that MetLife's "use of
8 surveillance could be seen as unreasonably intrusive" (*Id.* at 18). Yet, she fails to offer
9 facts sufficient to demonstrate that MetLife knew of this alleged bias or acted with
10 reckless disregard such that knowledge may be imputed to it. *Trus Joist*, 153 Ariz. at 104,
11 735 P.2d 125, 134. She also states that "MetLife's strategy has been to attack Dr. O in
12 countless ways . . . .They have now requested she attend a *new* IME, this time with a
13 malingering expert, looking for more support for its decisions, strongly suggesting that it
14 doesn't believe its own allegations that Dr. O is not disabled." (Doc. 312 at 15, n. 11.)
15 Again, she fails to offer facts that substantiate the existence of this "strategy," or deny
16 that multiple medical professionals expressed concern over the possibility of malingering,
17 or offer facts suggesting how the request for an additional IME constitutes bad faith when
18 such a request is specifically permitted under the terms of the Policy (Doc. 281-2 at 86
19 ("At our expense, we have the right to have a physician examine you as often as we feel
20 is reasonably necessary"); Doc. 281-2 at 136 ("At Our Expense, as often as is reasonably
21 necessary, We may require You to have an independent examination by a Physician of
22 Our Choice.")). In addition, even if a jury could find that the surveillance, the IME
23 request, or some other aspect of the claims processing was done with MetLife's
24 knowledge that its actions were unreasonable, her bad faith claim still fails as it is fairly
25 debatable.

26  Finally, Dr. Ogandzhanova appears to argue that because she was diagnosed with
27 PTSD, she is disabled and it was never and will never be appropriate or reasonable for
28 MetLife to investigate her claim further, despite the conflicting evidence regarding her

ability to function. As a result, any actions MetLife took to review the claim necessarily evidence bad faith. She cites no authority that substantiates this theory and the argument fails as a matter of law. Dr. Ogandzhanova therefore fails to demonstrate a meaningful dispute as to the two required prongs for establishing a claim of insurer bad faith in Arizona. MetLife is entitled to summary judgment on this claim.

## CONCLUSION

Plaintiff is entitled to summary judgment on both Defendant's claim that she may receive cost-of-living adjustments after age 65 and on her bad faith counterclaim. Neither Plaintiff nor Defendant is entitled to summary judgment on Plaintiff's declaratory judgment action as disputed issues of material fact remain.  Therefore,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 280) is **granted in part and denied in part**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. 282) is **denied**.

Dated this 27th day of May, 2014.

*A. Murray Snow*
/G. Murray Snow
United States District Judge